IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMIAH C.S. WATSON, ) | |
| ) | |
| Plaintiff, ) | Case No. CV05-218-N-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| SANDPOINT POLICE DEPARTMENT, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

      Pending before the Court in the above-entitled matter are Defendants' Motion for Summary Judgment Re: Jane Doe Defendants (Docket No. 33) and Motion for Summary Judgment (Docket No. 35) and Plaintiff's' Motion to Amend or Correct (Docket No. 30), Motion to Continue Summary Judgment (Docket No. 45), Motion to Compel Discovery (Docket No. 51), Motion to Continue Scheduling Order (Docket No. 52, and Defendants' Motion in Limine (Docket No. 57) and Motion to Compel (Docket No. 65) . Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.  Additionally, the Court is withdrawing the reference to Magistrate Judge Mikel H. Williams of non-dispositive matters.

**Factual Background**

      At approximately 11:00 p.m. on May 29, 2003, Plaintiff Jeremiah Watson was pulled over in a traffic stop by Sandpoint Police Department Officer Geise.  Officer Geise and his passenger Timothy Fry (who was riding along in order to prepare to become a new reserve officer with the Sandpoint Police Department) observed Plaintiff pull out in front of the patrol vehicle from the

Chevron station forcing Officer Geise to apply his brakes to avoid hitting Mr. Watson's car. Based on this failure to yield to oncoming traffic, the officer continued to follow and observe Plaintiff's car. Officer Geise and Mr. Fry then observed Mr. Watson making a wide turn across two lanes of travel and hitting the curb as he made the turn. Officer Geise turned on his lights and Mr. Watson pulled his vehicle to the side of the road. Plaintiff concedes Officer Geise made a valid traffic stop, however he claims the subsequent actions taken by the officer were in violation of his civil rights.

Officer Geise approached the vehicle and while speaking with Mr. Watson, notice Mr. Watson's eyes were bloodshot and glassy and his pupils were dilated. Officer Geise also observed Mr. Watson fumble with papers and had trouble holding onto the papers and Mr. Watson's speech was very slow and slurred and at times hard to understand. Another officer arrived as backup, Cover Officer Douglas Murphy. Officer Geise observed Mr. Watson making movements under the front seat so Geise asked if Mr. Watson had weapons in the car and to step out of the vehicle. Mr. Watson consented to a pat down search of his body and a search of the front of the car for weapons. No weapons were found. Mr. Watson remained outside the vehicle and the temperature at the time was approximately 70 degrees. Plaintiff denied drinking alcohol or taking illegal drugs or prescription drugs that day. The traffic stop was video taped by the officer although the audio portion of the tape is not always activated.

The Officer requested Plaintiff take a field sobriety test to determine if Mr. Watson was under the influence of alcohol or drugs. Plaintiff consented to the field sobriety test. The field test was administered by Officer Geise and observed by Mr. Fry. Officer Geise determined that Plaintiff did not pass all portions of the field test including but not limited to Mr. Watson's eyes did not track properly, his balance was off and he did not successfully complete the number counting test. Some of the field tests were properly completed by Plaintiff.

Two other Sandpoint Police Officers also arrived as backup: Richard Bailey and Douglas Murphy. Bonner County Sheriff's Deputy Van Hyning, who is a Certified Drug Recognition Expert, arrived on the scene and completed a preliminary field check. Deputy Van Hyning concurred with Officer Geise's conclusion that Watson was under the influence of an intoxicating substance or drug.

Plaintiff consented to a search of his vehicle prior to his arrest. Officer Geise advised Mr. Watson he was under arrest for DUI, handcuffed and transported him to the Bonner County Detention Center. At the Detention Center, Officer Geise administered a breath sample which showed no alcohol in Mr. Watson's system. No illegal substances were found on Mr. Watson's person during a pat down search. No strip search was conducted and Mr. Watson was not ordered to remove any clothing. Mr. Watson was not placed in contact with adult inmates while at the Detention Center. A urine test was completed and Plaintiff was told the results were positive. A second urine sample was taken.

Also at the detention center, Bonner County Sheriff's Deputy Van Hyning, completed a detailed drug influence evaluation on Plaintiff and noted Plaintiff's eyes were bloodshot and watery, pupils were abnormally dilated, he had raised taste buds (which can be a clinical indicator of the use of cannabis), slow/slurred speech, eyelid tremors, poor coordination indicated by Plaintiff's lack of balance and leg tremors. The officers also took Plaintiff into the bathroom and turned off the lights to check his pupils. Plaintiff testified in his deposition that the officers told him they were going to do another test when they took him into the bathroom and he was told to look up at the ceiling as they shined a light in his eyes and were measuring his pupils. Deputy Van Hyning's opinion was that Mr. Watson was under the influence of CNS depressants and cannabis and was not able to operate a vehicle safely. Deputy Van Hyning sent off a urine sample to be tested for drugs.

Officer Geise then booked Mr. Watson at the juvenile detention center on the DUI charge and a citation was issued. Defendant was allowed to contact his parents and he was later released on a $500 bond. The urine analysis did not reveal the presence of the drugs screened for and the charges against Mr. Watson were dismissed upon motion of the city attorney on July 9, 2003.

On May 27, 2005, Plaintiff filed his Complaint alleging his constitutional civil rights were violated pursuant to 42 U.S.C. § 1983 based on the stopping, investigating, arresting and charging Mr. Watson for driving under the influence. Plaintiff named as Defendants the Sandpoint Police Department and Sandpoint City Police Officers C. Geise, and John and Jane Does 1 through 9, Lori Meulenberg (Prosecuting Attorney for the City of Sandpoint), Bonner County Sheriff Department, Bonner County Correctional Facility, Bonner County Sheriff Deputies John and Jane Does 10 -12. Lori Meulenberg was determined to be entitled to absolute immunity from liability on the

allegations in Plaintiff's complaint and was dismissed from the action. See Order, Docket No. 16. Defendants Bonner County, Bonner County Sheriff Department and Bonner County Correctional Facility were dismissed without prejudice from the action. See Order, Docket No. 32.

Plaintiff moved to amend his Complaint and this motion was denied. See Order, Docket No. 27. Plaintiff has now filed a second motion to amend the Complaint to add the names of certain officers present during the traffic stop and testing at the Bonner County Detention Center and such officers' spouses as well as Deputy Mark Van Hyning and his wife. Plaintiff also proposes to add Chief of Police, R. Mark Lockwood in his official capacity as a Defendant. Defendants object to the proposed amendments as futile.

### Motion to Continue Summary Judgment

After filing a response to the motions for summary judgment and receiving Defendants reply to such motions, Plaintiff moved on March 26, 2006 to continue the summary judgment motions under Fed. R. Civ. P. 56(f) claiming Plaintiff needed to complete additional discovery on evidence of the police department's failure to train and supervise officers for deliberate indifference to the constitutional rights of persons subjected to search and seizure and Defendants had given incomplete answers to Plaintiff's Interrogatories regarding information concerning other complaints that may have been filed against Sandpoint. Defendants responded they have provided all discovery related to other similar claims and over 200 pages of discovery relating to officer training. Moreover, the Defendants argue no depositions were currently scheduled by Plaintiff and the discovery cut off was June 15, 2006 so the motion to continue should be denied.

The Court does find it unusual that the Rule 56(f) motion was filed <u>after</u> the Plaintiff had already filed responses to the pending motions for summary judgment and that no additional discovery in the form of depositions was scheduled in support of the motion for a continuance. Moreover, since the filing of the motion in March, Plaintiff has not moved for leave to file a supplemental brief based on the completion of any relevant discovery.

In support of a Rule 56(f) motion:

> [a] party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment. See Fed. R. Civ. P. 56(f); California v. Campbell, 138 F.3d 772, 779 (9th Cir.1998); see also 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2740 (3d ed.1998) ( "when the movant has met the initial burden required for the granting of

>a summary judgment, the opposing party either must establish a genuine issue for trial under Rule 56(e) or explain why he cannot yet do so under Rule 56(f)").

Tatum v. City & County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006).

In the present case, the Court finds the affidavit submitted in support of the continuance does not comply with the requirements of Rule 56(f) and it does not establish why this additional discovery could not have been requested earlier in the discovery period. It appears from the declaration of Defendants' counsel that the requested discovery has now been provided regarding officer training and other claims filed against the Sandpoint Police Department. Moreover, Plaintiff has provided no further evidence to the Court to consider in response to the motions for summary judgment. Therefore, in the absence of any firm showing that additional relevant facts could or have been discovered or that such facts would have precluded summary judgment, the Court must deny the motion for a continuance.

**Motion to Compel Discovery**

Plaintiff moves to compel certain discovery from Defendants. Defendants object to the discovery as irrelevant and burdensome. Plaintiff seeks the following information from the Defendants: all criminal cases between 2003-2005 that were dismissed for lack of probable cause and/or where evidence was suppressed because evidence was unlawfully obtained and all civil complaints and notices of intent to sue against the Sandpoint Police Department between 2003 and 2005. The Defendants claim they do not have the information regarding dismissals for probable cause or suppression of evidence and there is no easy computer search of such information as suggested by Plaintiff's counsel. Each hard file would have to be reviewed to determine why a case was closed. Defendants maintain they do not have the manpower available to conduct the search of all files requested by Plaintiff to determine why a case was dismissed. Moreover, the Defendants do not track when evidence is suppressed as that is a ruling by the Court. Defendants maintain all relevant information regarding civil complaints or notices of intent to sue against the Sandpoint Police Department have been provided.

The Court is mindful of the fact that Plaintiff is entitled pursuant to Fed. R. Civ. P. 26(b) (1) to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." The question in this case becomes is the information

requested relevant. Plaintiff had the option to depose Officer Geise regarding whether he has a history of having his cases dismissed for lack of probable cause during the discovery period. The relevant inquiry for this Court in the motion for summary judgment is whether an officer is entitled to qualified immunity in a probable cause case and such an inquiry depends on the objective reasonableness of the arrest when viewing the totality of the "facts and circumstances actually known to the officer" at the time of the arrest <u>Mendocino Envtl. Ctr. v. Mendocino County</u>, 14 F.3d 457, 462 (9th Cir.1994). No facts regarding Officer Geise's other arrests as a police officer have been provided to the Court, so the Court must assume the officer does not have a "history" of arresting persons without probable cause.

In reviewing the exhibits filed by Plaintiff in support of the motion to compel and motion to extend the scheduling order deadlines, the Court has determined that none of the exhibits relate to Officer Geise and because the Court finds that Officer Geise did not violate the constitutional rights of the Plaintiff (as discussed below), the exhibits are not relevant. Furthermore, the exhibits alone are insufficient to establish a pattern by the municipality as the exhibits relate to notices of tort claims and not actual lawsuits against the Sandpoint Police Department. Simply because a person states they were unlawfully arrested in a notice of tort claim, does not establish that a person's constitutional rights were in fact violated by a Sandpoint Police Officer. Without more, the few notices of tort claims submitted as exhibits by Plaintiff are not likely to lead to relevant evidence in this particular case against Officer Geise. The Court also finds the request for information regarding the number of cases dismissed for lack of probable cause or on suppression motions is not relevant to the inquiry of whether or not Officer Geise violated the rights of the Plaintiff on the night in question. The Court finds the requested discovery cannot establish a genuine issue of material fact regarding Officer's Geise's conduct on the night in question and has no bearing on the legal analysis of whether a municipality can be held liable if the Court finds Officer Geise did not violate Plaintiff's constitutional rights. Plaintiff was free to depose Officer Geise during the discovery period to find out his history in arresting persons and whether he has a history of having his cases dismissed for lack of probable cause. It appears, no such discovery was done by Plaintiff. Moreover, the Court finds the requested information on dismissed cases is an overbroad request as such is not available via a computer search by the Defendants. For these reasons, the Court finds Plaintiff's motion to compel should be denied.

Because the Court is denying the motion to compel, the motion to continue the deadlines in the scheduling order (Docket No. 52) is moot.

**Motions for Summary Judgment**

1. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

2. Motion for Summary Judgment on Jane Doe Defendants

Defendants move for summary judgment to have the remaining Jane Doe Defendants dismissed from the action. Plaintiff does not dispute that no female officers or deputies were involved in his arrest or in any acts giving rise to civil liability. It is clear to the Court that the Jane Doe Defendants were added in an attempt to state a claim against the marital community of the officers and deputies involved including those officers listed as a defendants in the proposed second amended complaint.

Fictitious names are allowed in complaints with the expectation that the identities will become known and relevant through discovery, however, fictitious defendants are not favored by the courts. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Under Idaho law, the recovery from the assets of the marital communities is not applicable to the facts of this case. First, Idaho law provides that a claim against a governmental employee for actions or omissions done within the scope of employment shall be indemnified by the governmental entity. Idaho Code § 6-903(b), ©. Here the City of Sandpoint and Bonner County assumed the defense of their employees and there is no evidence the officers and deputies involved were not acting within the scope of their employment. Second, Idaho Code § 6-226 precludes any excess individual liability for a governmental employee. Third, the wives of the officers and deputies have not been shown to have been "acting under the color of state law" so they cannot be liable under 42 U.S.C. § 1983. Fourth, the Plaintiff has not satisfied the three limiting principles for allowing the claims against the fictitious defendants to proceed. See Columbia Ins. Co. V. Seescandy.com, 185 F.R.D. 573, 578-80

(N.C. Cal. 1999). For all of these reasons, all Jane Doe Defendants are entitled to summary judgment and should be dismissed from the action.

3. Motion for Summary Judgment Against Remaining Named Defendants

The Defendants move for summary judgment in favor of the remaining named Defendants, Officer Geise and the Sandpoint Police Department. Defendants claim the officer is immune from liability due to the qualified immunity doctrine and that Plaintiff has failed to carry his burden regarding a claim against the governmental unit.

A. Claims Against Officer Geise

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that the police officers and sheriff's deputies were acting under color of state law when such law enforcement officers were performing their duties on May 29 -30, 2003. Therefore, the question becomes, did the officers' actions deprive Mr. Watson of a right, privilege or immunity secured by the Constitution or federal law.

Defendant Geise has raised the defense of qualified immunity. Police officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

MEMORANDUM ORDER - Page 9
06ORDERS\Watson_sj

it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

Under the Fourth Amendment, law enforcement officers may make a brief investigatory stop of a moving vehicle if under the totality of the circumstances, they are aware of articulable facts leading to a reasonable or well founded suspicion that the person has been, is, or is about to be engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 22 (1968). Traffic violations constitute criminal conduct and provide sufficient reasonable suspicion for an investigatory stop. Delaware v. Prouse, 440 U.S. 648, 661 (1979); United States v. Perez, 37 F.3d 510, 513 (9th Cir.1994) (finding sufficient reasonable suspicion existed for a stop when officer observed the driver weaving back and forth across the fog line).

In this case, Plaintiff concedes Officer Geise made a valid traffic stop. Additionally, the Court finds the admitted erratic driving by Mr. Watson (pulling out onto the road without yielding to oncoming traffic and making a wide turn which resulted in his car hitting the curb) establishes at a minimum that Officer Geise possessed a sufficient reasonable suspicion for stopping Mr. Watson. United States v. Lillard, 929 F.2d 500, 502 (9th Cir.1991) (finding sufficient reasonable suspicion existed for a stop when officer observed driver speeding carelessly); United States v. Gutierrez-Mederos, 965 F.2d 800, 803 (9th Cir.1992) (finding sufficient reasonable suspicion existed for a stop when officer observed the driver following too closely). Accordingly, there can be no constitutional violation for making the traffic stop.

The next question is was the prolonged stop including the searching of the vehicle and the Plaintiff for weapons, conducting the field sobriety tests and arresting the Plaintiff a violation of Plaintiff's constitutional rights. Mr. Watson has a right to be free from an unlawful searches and seizures and false arrests. However, law enforcement officers have the duty to arrest a person if they have probable cause to believe such person is committing a crime. Beck v. Ohio, 379 U.S. 89 (1964). In this case, Mr. Watson contends Officer Geise did not have probable cause to arrest him for driving under the influence.

An arrest is supported by probable cause if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002) (citation and internal quotation marks omitted). "In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." Bingham, 341 F.3d at 950 (internal quotation marks omitted). "Probable cause is more than mere suspicion." Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir. 1994). Whether an officer is entitled to qualified immunity in a probable cause case depends on the objective reasonableness of the arrest when viewing the totality of the "facts and circumstances actually known to the officer" at the time of the arrest Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457, 462 (9th Cir.1994).

The Court has viewed the video tape of the traffic stop and arrest as well as the related affidavits and deposition testimony of Mr. Watson. Under the doctrine of qualified immunity, Officer Geise is shielded from a suit for damages for false arrest if a reasonable officer in his position could have believed the arrest to be lawful in light of clearly established law. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1442-43 (9th Cir.1991). Thus, the precise issue is not whether probable cause existed but whether a reasonable officer in the Officer Geise's position would have believed that there was probable cause to arrest Plaintiff driving under the influence. Id. In this case, the Court finds a reasonable officer in Officer Geise's position would have believed there was probable cause to arrest Plaintiff for driving under the influence, so there can be no claim for false arrest or unlawful seizure.

First, the Plaintiff was observed by the officer to be at a minimum driving his vehicle in an inattentive manner and not necessarily in control of his vehicle when he hit the curb. Second, the officer observed bloodshot and glassy eyes with dilated pupils. Third, the officer observed slow or slurred speech by Mr. Watson. Fourth, Mr. Watson failed some of the field sobriety tests performed. Fifth, Deputy Van Hyning, a trained drug recognition expert, confirmed on the scene via a preliminary assessment that Mr. Watson was under the influence. Sixth, the field sobriety tests Plaintiff consented to perform were not cruel or unusual or intended to inflict emotional distress. The testing performed on Mr. Watson was normal sobriety testing and normally includes the examination of a driver's eyes and pupils. When the totality of the circumstances presented in

this case are considered by the Court, there is no doubt a reasonable officer in Officer Geise's position would have believed there was probable cause to arrest Plaintiff for driving under the influence. Then at the detention center, Deputy Van Hyning completed a detailed drug recognition evaluation and formed the opinion Mr. Watson was driving under the influence. So at the time, Officer Geise booked Mr. Watson for driving under the influence, it was reasonable on the part of Officer Geise to believe probable cause existed for the arrest. Having found no constitutional right was violated based on the testing and arrest of Plaintiff, the Court need not analyze whether the right was "clearly established" and the officer is entitled to qualified immunity.

Plaintiff argues there was no probable cause for the arrest as the charges were dismissed and the urine sample tested negative. This argument is not persuasive for purposes of the motion for summary judgment. The fact the DUI charges were dismissed or that the urine testing completed after the arrest did not disclose any of the illegal substances tested for is simply not relevant in determining whether based on the totality of the circumstances on the evening of the arrest, a reasonable officer in Officer Geise's position would have believed there was probable cause to arrest Plaintiff.

The Court need not address whether the searches of Mr. Watson for weapons or the vehicle violated Mr. Watson's rights as it clear from the video tape of the stop that Mr. Watson consented to such searches. Moreover, the pat down searches of Mr. Watson were for officer safety at the time of the traffic stop and as a matter of normal booking procedures at the detention center. Therefore, the searches in this case did not result in violations of Plaintiff's constitutional rights.

Mr. Watson alleges in his complaint that Officer Geise violated his rights when he "unreasonably required Plaintiff to post a $500 bond when Plaintiff was a resident minor child and should otherwise have been released on his own or his parents' recognizance." The Plaintiff has not produced any evidence that the amount of the bond was actually set by Officer Geise or that the amount of the bond was unreasonable in light of the bonds set for driving under the influence. Accordingly, this claim must be summarily dismissed.

Finally, Mr. Watson appears to insinuate in his complaint that the traffic stop and arrest were motivated by a personal vendetta against him. However, ulterior motives cannot invalidate police conduct that is otherwise justified. The actual motivations of the individual officer for making the traffic stop and/or the arrest are irrelevant since "[s]ubjective intentions play no role in ordinary,

probable-cause Fourth Amendment analysis." <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996) ("We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."); <u>Marks v. Clarke</u>, 102 F.3d 1012, 1033 (9th Cir. 1996) (applying <u>Whren</u> to reverse district court and grant summary judgment to officers on plaintiff's illegal pretext claim).

The Court finds, as a matter of law, that summary judgment is appropriate and that Officer Geise did not violate Plaintiff's constitutional rights and Officer Geise's actions are entitled to qualified immunity. Accordingly, the § 1983 claims against Officer Geise must be dismissed.

### B. Claims Against Sandpoint Police Department

Next, Plaintiff claims the Sandpoint Police Department's policies led to the violation of Mr. Watson's constitutionally protected rights. To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

<u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989)).

In this case, the Court finds Plaintiff has failed to carry his burden to establish via evidence that the municipality had a policy or custom which was the moving force behind the alleged constitutional violation. A plaintiff is required to provide evidence of a "formal policy" or "widespread practice" in order for a municipality or local government unit to be held liable under § 1983. <u>Nadell v. Las Vegas Metropolitan Police Dept.</u>, 268 F.3d 924 929 (9th Cir. 2001). A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1349 (9th Cir.1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1233 (9th Cir.1989).

Here, Plaintiff alleges the Police Department failed to train or supervise its officers, but has produced no specific evidence of a training or supervision policy that led to a constitutional violation in this case. Nor has Plaintiff provided evidence that the actual training received created

MEMORANDUM ORDER - Page 13
06ORDERS\Watson_sj

a widespread practice or repeated constitutional violations for which errant officers were not disciplined. Because, Plaintiff has not carried his burden, the claims against the Sandpoint Police Department must be dismissed.

Furthermore, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997). Because the Court concludes that the Sandpoint Police Officer Geise did not violate Mr. Watson's constitutional rights, summary judgment must also be granted in favor of the municipal Defendant.

### Motion to Amend or Correct Complaint

Plaintiff seeks to amend his complaint to add as parties certain persons whose names have now been discovered and their spouses. Defendants object to the proposed amendment as being futile. The Court need not address the proposed spouse amendments as the Jane Doe Defendants have already been dismissed from the action.

The standard of review was set forth by Judge Williams when he denied the earlier motion to amend in his Order, Docket No. 27, p.4:

> Leave to amend a pleading shall be "freely granted" absent a showing of undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. Emminence Capital, LLC v. Aspeon, Inc., 316 F.ed 1048 (9th Cir. 2003). An amendment can be denied on the grounds futility if the amended pleading itself would be subject to dismissal. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998).

As to the proposed claims against Sandpoint Police Officers Douglas Murphy, Richard Bailey and Eric Ryan, the Court finds the proposed amendments would be futile. The record is void of any evidence or allegation these other officers, who responded as backup officers on May 29, 2003, and who did not arrest Plaintiff violated Plaintiff's constitutional rights. Moreover, to the extent these officers participated in the arrest of Mr. Watson, the Court finds they, like Officer Geise, would be entitled to qualified immunity for their actions. Therefore, the amendment of these named officers would also be futile and the proposed amendments to the complaint are denied.

As to police chief R. Mark Lockwood, Plaintiff appears to claim Chief Lockwood's training and supervision policies and procedures led to the violation of Mr. Watson's constitutionally protected rights since the Chief was not directly involved in the arrest of Mr. Watson. Since Plaintiff is attempting to sue Chief Lockwood solely in his official capacity, this is actually a claim

MEMORANDUM ORDER - Page 14
06ORDERS\Watson_sj

against the municipality and an amendment adding Chief Lockwood would be futile as the claims against the municipality have been dismissed based on a lack of evidence and the fact that the Court has not found a constitutional violation on the part of Officer Geise.  Further, even if Officer Geise was liable, the Police Department cannot be held liable under § 1983 for the constitutional torts of its agents.  City of Canton v. Harris, 489 U.S. 378 (1989).

As to the proposed addition of Defendant Mark Van Hyning, the Bonner County Sheriff's Deputy and Drug Recognition Expert, the Court finds based on the same analysis as for Officer Geise, Deputy Van Hyning would be entitled to qualified immunity for his evaluation of Plaintiff and determination based on the totality of the circumstances and his test results that he had probable cause for his opinion Mr. Watson was driving under the influence.  For this reason, the Court finds the proposed amendment of adding Deputy Van Hyning would also be futile.

For these reasons, the Court finds Plaintiff's second motion to amend the complaint should be denied as the proposed amendments are futile.

**Order**

Being fully advised in the premises, the Court hereby orders:

1) The reference of non-dispositive matters to Magistrate Judge Mikel H. Williams is WITHDRAWN.

2) Plaintiff's Motion to Continue Summary Judgment Motion (Docket No. 45) is DENIED.

3) Defendants' Motion for Summary Judgment on Jane Doe Defendants (Docket No. 33) is GRANTED and the Jane Doe Defendants are dismissed with prejudice from this action.

4) Defendants' Motion for Summary Judgment (Docket No. 35) is GRANTED and the claims against the remaining named Defendants are dismissed and with no claims remaining the case is dismissed in it entirety.

5) Plaintiff's Motion to Amend or Correct Complaint (Docket No. 30) is DENIED.

6) Plaintiff's Motion to Compel Discovery (Docket No. 51) is DENIED.

7) Plaintiff's Motion to Continue Scheduling Order (Docket No. 52) is DENIED AS MOOT

8) Defendants' Motion to Compel Discovery (Docket No. 65) is DENIED AS MOOT.

9) Defendants' Motion in Limine (Docket No. 57) is DENIED AS MOOT.

DATED: **September 13, 2006**

Honorable Edward J. Lodge
U. S. District Judge